

PAS/BEF: USAO 2013R0832



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | **UNDER SEAL** |
| | * | |
| v. | * | CRIMINAL NO. GJH 16cr542 |
| | * | |
| APICHART SRIVARANON, | * | (Conspiracy to Unlawfully Export |
| a/k/a "Ter," | * | Arms and Munitions and Smuggle |
| a/k/a "Eisenhower Ter," and | * | Goods from the United States, 18 |
| NATCHAKRIS TEJASATAPORN, | * | U.S.C. §§ 371 and 554, 22 U.S.C. |
| a/k/a "Nutchakris Tejasataporn," | * | §§ 2778(b)(2) and (c), and 22 C.F.R. |
| a/k/a "P-Sun," | * | §§ 121.1, 123.1, and 127.1; Unlawfully |
| | * | Exporting Arms and Munitions, 22 |
| **Defendants** | * | U.S.C. §§ 2778(b)(2) and (c) and 22 |
| | * | C.F.R. §§ 121.1, 123.1, and 127.1; |
| | * | Witness Tampering, 18 U.S.C. § 1512; |
| | * | Aiding and Abetting, 18 U.S.C. § 2; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), 22 |
| | * | U.S.C. § 401, 21 U.S.C. § 853, 28 U.S.C. |
| | * | § 2461(c)) |
| | * | |

*******

## INDICTMENT

### COUNT ONE
#### (Conspiracy to Unlawfully Export Arms and Munitions
#### and Smuggle Goods from the United States)

The Grand Jury for the District of Maryland charges that:

#### Introduction

At all times relevant to this Indictment:

1.  **APICHART SRIVARANON, a/k/a "Ter," a/k/a "Eisenhower Ter,"**

("SRIVARANON") was a citizen of Thailand.

2.  **NATCHAKRIS TEJASTAPORN, a/k/a "Nutchakris Tejasataporn," a/k/a**

**"P-Sun," ("TEJASTAPORN")** was a citizen of Thailand.

3.     Co-Conspirator One was a citizen of Thailand. From on or about March 25, 2012, until on or about June 30, 2012, Co-Conspirator One resided in Ohio, and from on or about July 1, 2012, until on or about March 10, 2013, Co-Conspirator One resided in New York.

4.     Co-Conspirator Two was a citizen of Thailand. From on or about June 13, 2010, through the date of this Indictment, Co-Conspirator Two resided in Maryland.

5.     Co-Conspirator Three was a citizen of Thailand. From on or about April 16, 2001, through the date of this Indictment, Co-Conspirator Three resided in Nevada.

## The Arms Export Control Act

6.     The Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA" or the "Act") authorized the President to control the export of defense articles and defense services from the United States. Unless a specific exception applied, the Act provided that no defense articles or defense services could be lawfully exported without a license. 22 U.S.C. § 2778(b). The regulations promulgated pursuant to the Act were the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Sections 120 through 130. The United States Department of State, Directorate of Defense Trade Controls (the "DDTC") administered the ITAR and regulated the export of defense articles. Under Section 123.1 of the ITAR, any person who intended to export a defense article had to obtain the approval of the DDTC before such export occurred. Pursuant to the ITAR, exporting, or attempting to export, a defense article from the United States without a license or other written approval from the DDTC was unlawful. 22 C.F.R. § 127.1(a)(1). The ITAR defined exporting to include, among other things: "[s]ending or taking a defense article out of the United States in any manner." 22 C.F.R. § 120.17.

7.     The term "defense article" referred to any item or technical data designated on the

2

United States Munitions List ("USML"). 22 C.F.R. § 120.6. The USML set forth 21 categories

of defense articles that were subject to export licensing controls by the DDTC. 22 C.F.R.

§ 121.1.

        8.     The following firearms parts were defense articles ("firearms parts") designated

on the USML in Category I(g) or I(h), and therefore could not and cannot be lawfully exported

from the United States without a license or other written approval from the DDTC:

        a.     5.56mm barrels;

        b.     AR trigger guards;

        c.     556-Mod 44 charging handles;

        d.     AR-15 upper receivers;

        e.     AR-15/M-16 bolt catch springs;

        f.     .22 Caliber Glock Conversion Kit;

        g.     Stripped Upper Receivers;

        h.     Barrel Sub-Assm, 16.1'';

        i.     M4 4140cm SBN LR;

        j.     PMAG 30rd AR/M4 GEN M3; and

        k.     5.56x45 Magazine Magpul.

        9.     **SRIVARANON, TEJASATAPORN**, Co-Conspirator One, Co-Conspirator

Two, and Co-Conspirator Three never applied for, received, or possessed a license or other

written approval from the DDTC to export defense articles from the United States.

3

**The Conspiracy**

10.     Between approximately May 2012 to the date of this Indictment, the exact dates

being unknown to the Grand Jury, in the District of Maryland and elsewhere, the defendants,

**APICHART SRIVARANON,**
**a/k/a "Ter,"**
**a/k/a "Eisenhower Ter," and**
**NATCHAKRIS TEJASATAPORN,**
**a/k/a "Nutchakris Tejasataporn,"**
**a/k/a "P-Sun,"**

did willfully combine, conspire, confederate, and agree with each other, Co-Conspirator One,

Co-Conspirator Two, Co-Conspirator Three, and others known and unknown to the Grand Jury

to knowingly and willfully export defense articles listed on the USML from the United States to

Thailand, without having first obtained from the DDTC, a license or other written approval for

such export, in violation of Title 22, United States Code, Sections 2778(b)(2) and (c), and Title

22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1, and to fraudulently and

knowingly export merchandise, articles, and objects contrary to a law of the United States, in

violation of Title 18, United States Code, Section 554.

**The Objects of the Conspiracy**

11.     It was an object of the conspiracy to obtain firearms parts in the United States that

were on the USML and export them to Thailand without having first obtained the required

license or written approval from the DDTC.

12.     It was further an object of the conspiracy to fraudulently and knowingly export

USML firearms parts from the United States to Thailand.

13.     It was further an object of the conspiracy to conceal the prohibited transactions

from detection by the United States government.

4

## The Manner and Means of the Conspiracy

14.     It was part of the conspiracy that **SRIVARANON** and/or co-conspirators ordered USML firearms parts from United States-based firearms parts retailers and caused those firearms parts to ship to addresses in the United States where co-conspirators lived, visited, and/or conducted business.

15.     It was further part of the conspiracy that **SRIVARANON** used social media, electronic LiveChat, email, and telephone communication to communicate with Co-Conspirator One, Co-Conspirator Two, and Co-Conspirator Three in order to facilitate shipping firearms parts to Thailand.

16.     It was further part of the conspiracy that, at the direction of **SRIVARANON** and **TEJASATAPORN**, Co-Conspirator One and Co-Conspirator Two repackaged the USML firearms parts in the United States; falsely labeled United States Postal Service PS Forms 2976 and Customs Declarations CN 22 (sender's declarations forms) by using fake names, in some instances provided by **SRIVARANON**, for return addresses; falsely declaring the contents of these packages (e.g., as spare parts, bicycle parts, fishing parts, and toy parts) and understating their value; and then shipping these USML firearms parts to Thailand via the United States Postal Service and private shipping companies.

17.     It was further part of the conspiracy that **SRIVARANON** and/or co-conspirators agreed to transport firearms parts from locations outside the District of Maryland into the District of Maryland for purposes of exporting the firearms parts to Thailand.

## Overt Acts

18.     On or about the dates listed below, in the District of Maryland and elsewhere, the defendants committed at least one of the following overt acts in furtherance of the conspiracy:

a.      Between on or about May 15, 2012, through on or about May 16, 2012,
**SRIVARANON** contacted Co-Conspirator One, then living in Cincinnati, Ohio, and recruited
Co-Conspirator One to work for **SRIVARANON**. **SRIVARANON** (via LiveChat) explained
that **SRIVARANON** had "some special work" for Co-Conspirator One and that this work
involved shipping "gun supplies" to Thailand. **SRIVARANON** further stated that he would
train Co-Conspirator One on how to do the work, including how to "repack" the gun supplies
and mail them to Thailand. As part of his recruitment effort, **SRIVARANON** offered to pay Co-
Conspirator One for repacking the gun parts and to reimburse Co-Conspirator One for the
associated shipping costs. Co-Conspirator One accepted **SRIVARANON's** offer.

b.      On or about May 23, 2012, Co-Conspirator One provided
**SRIVARANON** with Co-Conspirator One's address in Cincinnati, Ohio, in order to have
**SRIVARANON** send Co-Conspirator One firearms parts that Co-Conspirator One would then
mail to Thailand.

c.      On or about May 23, 2012, **SRIVARANON** (via LiveChat) instructed Co-
Conspirator One that **SRIVARANON** had placed a firearms parts order and further instructed
Co-Conspirator One, "don't open the boxes in public alright!"

d.      Between on or about June 6, 2012, through on or about June 8, 2012,
**SRIVARANON** (via LiveChat) instructed Co-Conspirator One to label Co-Conspirator One's
firearms shipments as, "Toy spare part" on the sender's declaration forms. **SRIVARANON** also
instructed Co-Conspirator One to alternate the frequency and addresses of shipments, as well as
the estimated value of the contents of Co-Conspirator One's shipments.

e.      On or about July 4, 2012, **SRIVARANON** and Co-Conspirator One (via
LiveChat) discussed a shipment of "MAGAZINES" and "BARREL."

f.      On or about July 7, 2012, **SRIVARANON** and Co-Conspirator One (via LiveChat) discussed transferring payment to Co-Conspirator One to compensate Co-Conspirator One for sending firearms parts to Thailand.

g.      Between in or about July 2012, through in or about February 2013, **SRIVARANON** ordered and paid for firearms parts from Rainier Arms, located in Auburn, Washington, including, but not limited to, three 5.56mm barrels, one AR trigger guard, and two 556-Mod 44 charging handles, for delivery to Co-Conspirator One.

h.      On or about March 9, 2013, Co-Conspirator One received a firearms parts delivery from Rainier Arms at Co-Conspirator One's employer's residence.

i.      On or about March 10, 2013, **SRIVARANON** (via LiveChat) contacted Co-Conspirator One after Co-Conspirator One told **SRIVARANON** that Co-Conspirator One had been confronted by Co-Conspirator One's employer about the firearms parts delivery, and **SRIVARANON** directed Co-Conspirator One to mail the remaining firearms parts in Co-Conspirator One's possession to an individual in Nevada.

j.      Between on or about March 12, 2013, through on or about March 13, 2013, Co-Conspirator One (via LiveChat) told **SRIVARANON** that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was investigating the firearms parts and stated, "it's a very big problem." **SRIVARANON** (via LiveChat) told Co-Conspirator One to tell the ATF that Co-Conspirator One had never sent "any barrel" to Thailand.

k.      On or about March 13, 2013, **SRIVARANON** (via LiveChat) contacted the chief operating officer of Rainier Arms, and asked, "Can possible to delete my order history from database."

7

l.      In or about May 2013, **SRIVARANON** contacted Co-Conspirator Two, who was then living in College Park, Maryland, and recruited Co-Conspirator Two to ship firearms parts to Thailand in exchange for payments.

m.      On or about May 10, 2013, **SRIVARANON** sent an email to Co-Conspirator Two providing Co-Conspirator Two with specific instructions regarding how to smuggle and export to individuals in Thailand the firearms parts **SRIVARANON** had previously ordered and shipped to Co-Conspirator Two. In this same email, **SRIVARANON** instructed Co-Conspirator Two on how to fill out a postal declaration form and instructed Co-Conspirator Two to alternate the recipients of these mailings between three different individuals and addresses in Thailand and to provide a description of the contents as spare parts, bicycle parts, fishing parts, or toy parts.

n.      Between in or about May 2013, through in or about September 2013, **SRIVARANON** paid for and placed separate orders of firearms parts including, but not limited to, AR-15 upper receivers and AR-15/M-16 bolt catch springs for delivery to Co-Conspirator Two.

o.      On or about September 17, 2013, at the U.S. Post Office in Brentwood, Maryland, Co-Conspirator Two, at the direction of **SRIVARANON**, attempted to illegally smuggle and export to Thailand firearms parts, specifically, six AR-15 upper receivers, falsely declared to be "fishing parts" worth $16.73.

p.      On or about September 18, 2013, at the U.S. Post Office in Brentwood, Maryland, Co-Conspirator Two, at the direction of **SRIVARANON**, attempted to illegally smuggle and export to Thailand firearms parts, specifically, twelve AR-15 upper receivers, falsely declared to be "fishing parts" and "bicycle parts" worth $18.56 and $11.33, respectively.

q.      On or about October 2, 2013, at the U.S. Post Office in Brentwood, Maryland, Co-Conspirator Two, at the direction of **SRIVARANON**, attempted to illegally smuggle and export to Thailand firearms parts, including five AR-15/M-16 bolt catch springs, all falsely declared to be "bicycle parts" worth $12.44.

r.      On or about October 16, 2013, Co-Conspirator Two (via LiveChat) notified **SRIVARANON** that Co-Conspirator Two had received a notice from U.S. Customs that U.S. Customs had found firearms parts in Co-Conspirator Two's shipments to Thailand and that U.S. Customs believed that Co-Conspirator Two's shipments were, "illegal to export under the Arms Export Control Act." **SRIVARANON** then directed Co-Conspirator Two to stop existing shipments to Thailand and instead send the remaining firearms parts to Co-Conspirator Three in Nevada.

s.      On or about November 15, 2013, Co-Conspirator Three, then living in Nevada, spoke with **TEJASATAPORN**.  During their conversation, Co-Conspirator Three told **TEJASATAPORN** that Co-Conspirator Three had received **TEJASATAPORN's** "list" of firearms parts.  **TEJASATAPORN** responded that the parts included "two long uppers" and that these long uppers were not just for **TEJASATAPORN**, but also were for **TEJASATAPORN's** "friend."  **TEJASATAPORN** also stated that part of the order for **TEJASATAPORN's** "friend" was from Rainier Arms.

t.      On or about February 5, 2014, Co-Conspirator Three received a package in Nevada containing a .22 Caliber Glock Conversion Kit that was previously paid for by **SRIVARANON**.

u.      On or about March 20, 2014, Co-Conspirator Three and an undercover law enforcement officer ("UC") met with **SRIVARANON** and **TEJASATAPORN** in Bangkok,

9

Thailand. During this meeting, **SRIVARANON** and **TEJASATAPORN** inquired as to whether the UC could ship firearms parts from the United States to **SRIVARANON** and **TEJASATAPORN** in Thailand.

        v.      On or about March 31, 2014, **TEJASATAPORN** sent the UC an email stating, "I have a list." The UC responded that **TEJASATAPORN** should not email the UC and should instead check a "draft" folder of an email account previously provided to **TEJASATAPORN**.

        w.      On or about April 2, 2014, **TEJASATAPORN** composed a draft email asking the UC to ship to **TEJASATAPORN** in Thailand firearms parts including, "20 Stripped Upper Receivers," "10 Barrel Sub-Assm, 16.1'," "M4 4140cm SBN LR," and "100 PMAG 30rd AR/M4 GEN M3, 5.56x45 Magazine Magpul."

18 U.S.C. § 371
22 U.S.C. §§ 2778(b)(2) and (c)
22 C.F.R. §§ 121.1, 123.1, and 127.1
18 U.S.C. § 554

## COUNTS TWO THROUGH FOUR
### (Unlawfully Exporting Arms and Munitions from the United States)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 9 and 11 through 18 of Count One are incorporated herein.

2.     On or about the dates specified, in the District of Maryland and elsewhere, the

defendant,

### APICHART SRIVARANON,
#### a/k/a "Ter,"
#### a/k/a "Eisenhower Ter,"

did willfully attempt to export and caused the export from the United States to Thailand of the

firearms parts listed in the Counts below, all of which were and are designated as defense articles

on the USML, the export of which was and is controlled under the Arms Export Control Act,

without having first obtained from the DDTC the required license or other written approval for

such export:

| Count | Date | Act in Execution |
|-------|------|------------------|
| 2 | September 17, 2013 | Caused the attempted export to Thailand of six AR-15 upper receivers from Brentwood, Maryland. |
| 3 | September 18, 2013 | Caused the attempted export to Thailand of twelve AR-15 upper receivers from Brentwood, Maryland. |
| 4 | October 2, 2013 | Caused the attempted export to Thailand of five AR-15/M-16 bolt catch springs from Brentwood, Maryland. |

22 U.S.C. §§ 2778(b)(2) and (c)
22 C.F.R. §§ 121.1, 123.1, and 127.1
18 U.S.C. § 2

## COUNT FIVE
### (Tampering with a Witness)

The Grand Jury for the District of Maryland further charges that:

1.       Paragraphs 1 through 9 and 11 through 18 of Count One are incorporated herein.

2.       Between on or about March 12, 2013, through on or about March 13, 2013, in the

District of Maryland and elsewhere, the defendant,

**APICHART SRIVARANON,**
**a/k/a "Ter,"**
**a/k/a "Eisenhower Ter,"**

corruptly persuaded Co-Conspirator One, and attempted to do so, and engaged in misleading

conduct towards another person, with the intent to hinder, delay, and prevent the communication

to a law enforcement officer or judge of the United States of information relating to the

commission or possible commission of a federal offense.


18 U.S.C. § 1512(b)(3)

**FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further finds that:

1. Upon conviction of the offenses in violation of Title 22, United States Code, Section 2778 set forth in Counts 1 through 4 of this Indictment, the defendants,

**APICHART SRIVARANON,**
**a/k/a "Ter,"**
**a/k/a "Eisenhower Ter," and**
**NATCHAKRIS TEJASATAPORN,**
**a/k/a "Nutchakris Tejasataporn,"**
**a/k/a "P-Sun,"**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 22, United States Code 401, and Title 28, United States Code, Section 2461(c):

a. any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses;

b. firearms parts, arms or munitions of war or other articles, commodity, or technology involved in the offenses; and

c. any vessel, vehicle, or aircraft containing the arms or munitions of war or other articles involved in the offenses or which has been or is being used in exporting or attempting to export such arms or munitions of war or other articles, commodity, or technology involved in the offenses.

2.      Upon conviction of the offenses in violation of Title 18, United States Code,

Section 554 set forth in Count 1 of this Indictment, the defendants,

**APICHART SRIVARANON,**
**a/k/a "Ter,"**
**a/k/a "Eisenhower Ter," and**
**NATCHAKRIS TEJASATAPORN,**
**a/k/a "Nutchakris Tejasataporn,"**
**a/k/a "P-Sun,"**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section

981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal,

which constitutes or is derived from proceeds traceable to the offenses.

### Substitute Assets

3.      If any such property subject to forfeiture, as a result of any act or omission of any

defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be subdivided

without difficulty;

it is the intent of the United States of America, pursuant to Title 18, United States Code, Section

981(b) and Title 28, United States Code, Section 2461(c), incorporating Title 21, United States

14

Code, Section 853, to seek forfeiture of any other property of said defendant up to the value of

the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853
22 U.S.C. § 401
28 U.S.C. § 2461(c)

*Rod J. Rosenstein /PAS*
Rod J. Rosenstein
United States Attorney

A TRUE BILL

**SIGNATURE REDACTED**

Date:   November 9, 2016

15